IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT ANTHONY DRAYTON,

        Petitioner,             No. CIV S-99-0708 GEB DAD P

    vs.

R. CASTRO,

        Respondent.          <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1996 judgment of conviction on charges of first degree murder and robbery entered in the Sacramento County Superior Court.  He claims that: (1) there was insufficient evidence to support the jury's finding that the murder in question was committed during the commission of a robbery; (2) the jury was given erroneous instructions with respect to the robbery special circumstance; and (3) the trial court erred when it failed to record the original verdict returned by the jury.  After a careful review of the entire record in this action, including the lodged records of the state court, this court has determined that the petition for habeas corpus should be denied.

/////

/////

1

PROCEDURAL BACKGROUND

In an amended information filed March 21, 1996, petitioner was charged with murder, in violation of California Penal Code § 187(a), with a special circumstance allegation that the crime was committed during the commission or attempted commission of a robbery (Count I); and robbery in violation of California Penal Code § 211 (Count II).  (Clerk's Transcript on Appeal (CT) at 759-61.)[1]   It was further alleged that petitioner personally used a deadly weapon during the commission of the murder and robbery within the meaning of California Penal Code § 12022(b).  (Id.)  Following a jury trial, petitioner was found guilty of murder in the first degree with the use of a deadly weapon, as charged in Count I.  (Id. at 445.) The special circumstance allegation that the murder was committed while petitioner was engaged in the commission or attempted commission of a robbery was found true after the original verdict was sent back to the jury for further deliberations.  (Id.)  Petitioner was also convicted of robbery with the use of a deadly weapon.  (Id. at 446.)   On June 3, 1996, petitioner was sentenced to life without the possibility of parole plus a one-year consecutive use of a firearm enhancement.  (Id. at 824.)  He was also ordered to pay restitution fines.  (Id.)

All of petitioner's state court challenges to his conviction were unsuccessful. (Answer at 3 & Exs. D, F.)  The instant petition was filed on April 12, 1999.

FACTUAL BACKGROUND[2]

> On September 27, 1995, Caecile Lender, a homeless woman, went to a transient encampment along the American River where she drank and talked with Drayton and Jonathan and Veda Britton.  As the Brittons were leaving, Bracy arrived with Charlie Hisaw and George Hooulu.

---

[1]  Petitioner's co-defendant, Tristan L. Bracy, was charged with murder with a special circumstance (Count I) and rape (Count III).  (Id.)

[2]  The following summary is drawn from the January 5, 1998, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-3, lodged on October 13, 1998, as Exhibit D to respondent's Answer.  These facts are fairly supported by the record.

Caecile, who had been kissing Drayton, turned her attention to Bracy and they entered a nearby lean-to.  A short time later, Caecile began yelling, "No, please don't," and sometime thereafter Caecile and Bracy came out of the lean-to straightening their clothing.  Hisaw asked Bracy what happened, and Bracy responded, "We did it."  Bracy stated he raped Caecile and told the others to "get rid of her" because he wasn't going to jail for it.  Caecile had walked about six feet from the lean-to when Drayton grabbed her and threw her down an embankment, where she fell approximately 15 feet to some rocks below.  Drayton and Hisaw threw rocks at her.  Caecile entered the river and swam to the other side.  After unsuccessfully attempting to retrieve Caecile's purse,[3] which floated away, Drayton ran to the other side of the levee, and as Caecile got out of the water, he started throwing rocks at her.  Caecile crawled back to the river.  Drayton caught her and held her head under the water, then dragged her to the beach, removed her clothing, and dropped a huge rock on her face.  Drayton removed Caecile's watch and rings, breaking one of her fingers as he did so.  Drayton then dragged Caecile back to the river, and after again holding her head underwater, let her go and she floated down the river.[4]  At Bracy's direction, the men threw Caecile's clothes in the river.

The day after Caecile's murder, Bracy analogized his role in the killing to "a general commanding his troops" and declared, "We killed the bitch."

The coroner testified Caecile died from drowning.  Drayton did not present a defense; Bracy offered witnesses who testified to his nonviolent character.

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

/////

---

[3]  The testimony also refers to Caecile's purse as a backpack.

[4]  Testimony in the record suggests Drayton may have attempted to assault Caecile sexually while in the water.

1   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

2   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

3   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

4   (1972).

5           This action is governed by the Antiterrorism and Effective Death Penalty Act of

6   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

7   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

8   habeas corpus relief:

9           An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall

10      not be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of the

11      claim -

12          (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as

13      determined by the Supreme Court of the United States; or

14          (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the

15      State court proceeding.

16   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

17   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

18           The court looks to the last reasoned state court decision as the basis for the state

19   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

20   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

21   federal habeas court independently reviews the record to determine whether habeas corpus relief

22   is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

23   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

24   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

25   AEDPA's deferential standard does not apply and a federal habeas court must review the claim

26   /////

1    de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

2    1167 (9th Cir. 2002).

3    II.  Sufficiency of the Evidence

4              Petitioner's first claim is that the evidence was insufficient to support the special

5    circumstance finding that the murder occurred during the commission or attempted commission

6    of a robbery.  Although petitioner admits taking the victim's "personal items," he argues that

7    "robbery was never intended and certainly didn't motivate the killing."  (Pet. at consecutive p. 8.)

8    He explains that the murder was carried out at the instigation of his co-defendant, Tristan Bracy,

9    in order to silence the victim so that she could not accuse Bracy of rape.  (Id.)  He contends that

10   the theft of the victim's jewelry was merely "incidental to the murder."  (Id.)  He explains that

11   "petitioner was not otherwise predisposed to rodding [sic] her except for the idea that since she

12   "had to" die (because Tree raped her) he might as well profit from her property."  (Traverse at

13   14.)  Petitioner argues that for these reasons the special circumstance allegation should have been

14   "stricken."  (Id. at 2.)

15             The Due Process Clause of the Fourteenth Amendment "protects the accused

16   against conviction except upon proof beyond a reasonable doubt of every fact necessary to

17   constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There

18   is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

19   favorable to the prosecution, any rational trier of fact could have found the essential elements of

20   the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also

21   Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question

22   under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond

23   a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,

24   443 U.S. at 318).  A petitioner for a federal writ of habeas corpus "faces a heavy burden when

25   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

26   process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n13 (9th Cir. 2005).  In order

1   to grant the writ, the federal habeas court must find that the decision of the state court reflected

2   an objectively unreasonable application of Jackson and Winship to the facts of the case.  Id.

3          The court must review the entire record when the sufficiency of the evidence is

4   challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

5   vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

6   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

7   reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

8   fact could draw conflicting inferences from the evidence, the court in its review will assign the

9   inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

10   relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

11   the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

12   Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a

13   reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors

14   reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court

15   determines sufficiency of the evidence in reference to the substantive elements of the criminal

16   offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

17          The evidence adduced at petitioner's trial is set forth above.  In addition, the

18   California Court of Appeal summarized the evidence which supported the special circumstance

19   allegation as follows:

20          Here, the evidence does not suggest the robbery was for the
            purpose of facilitating or concealing Caecile's murder.  When

21          Caecile entered the river, her purse floated away and Drayton
            attempted to retrieve it, telling the others it contained money.

22          Drayton also removed Caecile's watch and rings, breaking one of
            her fingers, before pushing her into the water a second time.

23

24   (Opinion at 19.)  The California Court of Appeal recognized petitioner's argument that "if he

25   killed Caecile on Bracy's orders, he therefore did not kill her in the commission of a robbery."

26   (Id.)  The state appellate court concluded, however, that the jury could have found that petitioner

killed Caecile with "dual intent;" i.e., to prevent her from accusing Bracy of rape and also in the

commission of a robbery.  (Id.)  The court opined that a reasonable jury could find that petitioner

intended to steal Caecile's jewelry before he killed her and that the killing was carried out in

furtherance of that objective.  (Id. at 20.)  In this regard, the California Court of Appeal stated:

> It is reasonable to infer that Drayton, a 16-year-old homeless man
> who lived in a transient encampment along the river and collected
> aluminum cans for cash, would view Caecile's purse, rings, and
> watch as "substantial property."  Substantial evidence supports the
> special circumstance.

(Id. at 20.)  This determination may not be set aside unless it is contrary to or an unreasonable

application of clearly established federal law or is based upon an unreasonable determination of

the facts.  28 U.S.C. § 2254(d).

The undersigned has reviewed the transcripts and record of the proceedings

leading to petitioner's conviction and concludes that sufficient evidence was presented at trial to

support the jury's finding that the murder was committed in the commission or attempted

commission of a robbery.  Testimony at petitioner's trial established that after Caecile was in the

water, her purse began to float down the river.  (RT at 678-79.)  Petitioner told others at the scene

that they should get the purse because it had money in it.  (Id. at 1061-63.)[5]  Trial testimony also

established that petitioner took four rings off Caecile's fingers.  (Id. at 901-02.)  He also took her

watch.  (Id. at 905.)  After seizing these items, petitioner walked to shore and showed those

present the jewelry he had taken.  (Id. at 902, 1063.)  Petitioner kept one of the rings ("the gold

one") and gave the other items to persons at the scene.  (Id. at 1063.)  There was additional

evidence introduced at trial that petitioner told one of those individuals at the scene that "he

removed the rings and watch from the victim and that he broke one of her fingers trying to get

another ring or rings off."  (Id. at 1107.)

/////

---

[5] The purse was apparently never retrieved.  (Id.)

1          Pursuant to California law, a robbery is defined as "the felonious taking of

2   personal property in the possession of another, from his person or immediate presence, and

3   against his will, accomplished by means of force and fear," with the intent to permanently

4   deprive the victim of his or her property, and with an act of force or intimidation motivated by

5   the intent to steal.  Cal. Penal Code § 211; People v. Dominguez, 38 Cal. App. 4th 410, 417

6   (1995); People v. Brito, 232 Cal. App. 3d 316, 324 n.7 (1991).  If the elements of robbery are

7   proven, the robbery attaches as a "special circumstance" to a murder if the murder was

8   committed while the defendant was "engaged in, or was an accomplice in, the commission of,

9   attempted commission of, or the immediate flight after committing, or attempting to commit" the

10   robbery.  Cal. Penal Code § 190.2(17)(A).

11          The testimony at petitioner's trial was sufficient to establish that he intended to

12   rob the victim of her personal property and that he murdered the victim while he was engaged in

13   the robbery.  Although petitioner may have begun the assault upon Caecile at the insistence of

14   co-defendant Bracy, the evidence presented at trial was entirely susceptible to the conclusion that

15   petitioner killed the victim as a result of, and as part of, his independent desire to steal her

16   personal property.  Petitioner pursued the victim relentlessly until he was able to remove four

17   rings and a watch from her person.  It wasn't until she was nearly dead and he had broken one of

18   her fingers that he was able to accomplish this goal.  Under these circumstances, a reasonable

19   jury could have found that petitioner intended to steal the victim's jewelry before he killed her

20   and that the murder was part and parcel of the robbery.  Thus, the evidence presented at

21   petitioner's trial was sufficient to support the jury's finding that he killed the victim in the

22   commission or attempted commission of a robbery.

23   /////

24   /////

25   /////

26   /////

1    The jury in petitioner's case was specifically instructed that "with respect to the

2  alleged special circumstance, a person may act with dual intent"[6] and that "a special circumstance

3  allegation of murder committed while engaged in the commission or attempted commission of a

4  robbery is not established if a robbery is merely incidental to the murder such as forming an

5  intent to steal as an afterthought."  (RT at 1497.)  The jury was further instructed that "if an

6  individual kills for reasons unrelated to theft, for example, because of anger, fear or revenge, and

7  then decides to take advantage of the situation by stealing some object from the person of the

8  decedent, the taking will constitute at most a theft and not a robbery."  (Id. at 1498.)  The jury

9  rejected the defense theory that the robbery was "incidental" to the murder and concluded, based

10  on the evidence introduced at trial, that the murder was committed, at least in part, in order to

11  advance or carry out the crime of robbery.  (See CT at 626.)  The test for this court is not whether

12  petitioner's version of the events is plausible, but whether the state courts' opinion that a rational

13  jury could have found the special circumstance allegation true is contrary to or an unreasonable

14  application of clearly established federal law, or an unreasonable interpretation of the facts in

15  light of the evidence presented at trial.  The undersigned concludes that it is not.  Viewing the

16  evidence in the light more favorable to the prosecution, as the court is required to do, the

17  undersigned concludes that a rational juror could have found the special circumstance allegation

18  to be true.

19    Because there was substantial evidence presented at trial to support petitioner's

20  conviction on the first-degree murder charge with the special circumstance, the state court's

21  analysis of this claim is not "objectively unreasonable."  Woodford v. Visciotti, 537 U.S. 19, 25

22  (2002).  See also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to relief on his

23  claim challenging the sufficiency of the evidence upon which he was convicted.

24

25    [6] The reporter's transcript erroneously reflects the word "talent" in the jury instruction
instead of the word "intent."  However, the written instruction properly uses the word "intent."
26  (See RT at 1497; CT at 634.)

III.  Jury Instruction Error

Petitioner next claims that "the jury was misinstructed on the rules governing the robbery special circumstances."  (Pet. at consecutive p 6.)  Specifically, he contends that the trial court erred in (1) failing to strike the word "or" from CALJIC No. 8.81.17, and (2) incorrectly stating the law in the instruction explaining the special circumstance allegation.  Below, the court will evaluate these claims in turn.

A.  Legal Standards

A challenge to jury instructions does not generally state a federal constitutional claim.  See Middleton v. Cupp, 768 F.2d at 1085 (citing Engle v. Isaac, 456 U.S. at 119); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction cannot be merely "undesirable, erroneous, or even universally condemned, but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. State of California, 843 F.2d at 317 (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)) (internal quotes omitted).  To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process."  Prantil, 843 F.2d at 317 (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)).  In making its determination, this court must evaluate the challenged jury instructions "in the context of the overall charge to the jury as a component of the entire trial process."  Id. (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Where the challenge is a failure to give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

/////

/////

/////

B. <u>CALJIC 8.81.17</u>

Petitioner's jury was given three instructions with regard to the special circumstance allegation that the murder was carried out while petitioner was engaged in the commission or attempted commission of a robbery. Initially, the court instructed the jury that:

> To find that the special circumstance, referred to in these instructions as murder in the commission or attempted commission of a robbery, is true it must be proved one, the murder was committed while the defendant was engaged in the commission or attempted commission of a robbery, and two, the murder was committed in order to avoid detection.
>
> In other words, the special circumstance referred to in these instructions is not established if the robbery was merely incidental to the commission of the murder.

(RT at 1494.)

Subsequently, the court instructed the jury that:

> The other instruction that I am going to reread is in your packet, it will be numbered 52. To find that the special circumstance referred to in these instructions as murder in the commission or attempted commission of a robbery is true, it must be proved one, the murder was committed while the defendant was engaged in the commission or attempted commission of a robbery.

(<u>Id.</u> at 1495, CT at 441.)

Finally, the court told the jury:

> Ladies and gentlemen, yesterday I asked you to review your instruction 52A, but I want to read this instruction on the record in your presence, 52A.
>
> To find that the special circumstances referred to in these instructions is murder in the commission of a robbery is true, it must be proved the murder was committed while the defendant was engaged in the commission or attempted commission of a robbery ***and/or*** two, the murder was committed in order to carry out or advance the commission of the crime of robbery.

/////

/////

11

> In other words, the special circumstances referred to in these
> instructions is not established if the robbery was merely incidental
> to the commission of the murder.

(RT at 1651-52) (emphasis added).[7]

Petitioner argues that the trial court committed error by failing to strike the word "or" from the third instruction, set forth above, and by doing so "left the jury with the possibility of finding the special circumstances true even though they may not have found the second (CRUCIAL) requirement true, to wit, that the murder advanced the commission of a preconceived robbery." (Pet. at consecutive p. 8.) Respondent concedes that the trial court erred in failing to omit the "or" from this instruction but argues that the error was harmless in light of the other instructions given.

The California Court of Appeal also found that the trial court committed instructional error when it failed to omit the word "or" from CALJIC 8.81.17. However the state appellate court concluded that the error was harmless because other instructions given accurately

/////

/////

/////

/////

/////

/////

/////

---

[7] The jury instructions that appear in the Clerk's Transcript on Appeal do not contain an instruction numbered "52." (See CT at 625-26.) There is, however, an instruction numbered "52a." (RT at 626.) The record reflects that petitioner's jury was advised in open court that jury instruction No. 52 would be replaced with a modified instruction numbered 52a. (RT at 1647-49; see also CT at 437.) The record also reflects that petitioner's counsel objected to the modified instruction numbered 52a, not on the grounds asserted by petitioner now, but only on the grounds that 52a addressed matters already covered by other instructions. (See RT at 1648.) Instruction No. 52 was removed from the jury packet but was placed in, and made part of, the court file. (CT at 437, 441.)

1   instructed the jury on the relevant law.  (Opinion at 21-22.)[8]  The court specifically noted that

2   petitioner's jury had been given the following two instructions:  (1) "the special circumstances

3   referred to in these instructions is not established if the robbery was merely incidental to the

4   commission of the murder;" and (2) "a special circumstance allegation of murder committed

5   while engaged in the commission or attempted commission of a robbery is not established if a

6   robbery is merely incidental to the murder, such as forming an intent to steal as an afterthought."

7   (Id. at 22; RT at 1494, 1497, 1652.)  The state appellate court concluded that "the instructions, as

8   a whole, adequately instructed the jury on the law, and the jury could not reasonably have been

9   misled."  (Opinion at 22.)

10          The undersigned agrees that the jury instructions given, read as a whole,

11   accurately instructed petitioner's jury as to the requirements under state law for a true finding

12   with respect to the special circumstance allegation.  As the United States Supreme Court has

13   instructed, "[i]n evaluating [jury] instructions, we do not engage in a technical parsing of [the]

14   language of the instructions, but instead approach the instructions in the same way that the jury

15   would--with a "commonsense understanding of the instructions in the light of all that has taken

16   place at the trial."  Johnson v. Texas, 509 U.S. 350, 368 (1993) (quoting Boyde v. California, 494

17   U.S. 370, 381 (1990)).  The additional jury instructions highlighted by the California Court of

18

19          [8]  The state appellate court set forth the relevant law as follows:

20              "A murder is not committed during a robbery within the meaning
                of the [special circumstance] statute unless the accused has 'killed
21              in cold blood in order to advance an independent felonious
                purpose, e.g., [has] carried out an execution-style slaying of the
22              victim of or witness to a holdup, a kidnaping, or a rape.'  A special
                circumstance allegation of murder committed during a robbery has
23              not been established where the accused's primary criminal goal 'is
                not to steal but to kill and the robbery is merely incidental to the
24              murder . . . because its sole object is to facilitate or conceal the
                primary crime.'"  (People v. Thompson, (1980) 27 Cal. 3d 303,
25              322, italics in original, citations omitted.)

26   (Opinion at 21.)

1   Appeal made it clear to petitioner's jury that they could not find the special circumstance true if

2   they found the robbery was "incidental" to the petitioner's commission of the murder or that the

3   robbery was a mere afterthought.   In other words, petitioner's jury was informed more than once

4   that the special circumstance did not attach if the robbery was merely incidental to petitioner's

5   commission of the murder.   (See Opinion at 22-23.)   The jury was told that more was required.

6   The state appellate court also noted that the language of the additional instructions appeared to

7   cover the same subject matter as the second portion of CALJIC 8.81.71 and that the two are

8   nearly synonymous.   In fact, at petitioner's trial, counsel on behalf of all parties agreed that

9   instruction No. 58a (special circumstance not established if robbery is merely incidental to

10   murder) covered "essentially the same point" as the second portion of instruction No. 52a (that in

11   order for the special circumstance to apply, the murder must have been committed in order to

12   carry out or advance the robbery).   (See RT at 1648-49; CT at 626, 634.)   Thus, contrary to

13   petitioner's claim, the jury could not reasonably have found the special circumstance true merely

14   upon finding that the murder was committed while defendant was engaged in the commission of

15   a robbery.[9]

16           The conclusion of the California Court of Appeal that the jury instructions as a

17   whole correctly informed the jury of the legal requirements for a finding that the special

18   /////

19

---

20           [9] Petitioner contends that the jury was confused by the challenged instruction. (Traverse
    at 17.)  The record reflects that after the jury delivered the completed verdict forms to the judge,
21   a juror asked the court, "Can you have murder and robbery without the special circumstance?"
    (RT at 1657.)  In response to this question, the court referred the jury to instructions 52a (CT at
22   626) and 58a (CT at 634).  The undersigned finds that the record does not support petitioner's
    contention that the jury was confused by instruction No. 8.81.17.  The jury's ultimate verdict was
23   unanimous.  Petitioner also argues that the prosecutor improperly informed the jury in his closing
    argument that "all they needed to find was that petitioner harbored the intent to kill and the intent
24   to rob." (Traverse at 18.)  Upon review of the record, the undersigned concludes that
    prosecutor's closing argument did not mislead the jury with respect to the law.  (See RT at 1516-
25   18; 1622.)  The prosecutor clearly informed the jury that if the robbery was simply incidental to
    the murder, the special circumstance instruction did not apply.  (Id.)  The argument, read as a
26   whole and in context, was not improper.

1    circumstance allegation was true, is not contrary to or an unreasonable application of established

2    federal law.  Accordingly, relief as to this claim should be denied.

3         C.  Special Circumstance Instruction

4              Petitioner challenges the following "special circumstance" instruction given to the

5    jury in his case:

> With respect to the alleged special circumstance, a person may act
> with dual intent.  However, a special circumstance allegation of
> murder committed while engaged in the commission or attempted
> commission of a robbery is not established if a robbery is merely
> incidental to the murder, such as forming an intent to steal as an
> afterthought.  *On the other hand, where the evidence suggests that
> the defendant intended to kill and rob the victim, the robbery is not
> merely incidental to the murder.*

11   (CT at 634, RT at 1497.)   In this regard, petitioner contends that the portion of this instruction

12   italicized above is an "incorrect statement of law" and conflicts with CALJIC 8.81.17.  (Traverse

13   at 17.)

14              The California Court of Appeal rejected petitioner's argument, stating as follows:

> Although inartfully drafted, when this instruction is taken together
> with the other jury instructions, the jury was told it could find the
> special circumstance true only if the robbery was not incidental to
> the murder, but instead that the murder was committed while
> defendant was engaged in the commission of a robbery.  We find
> no reasonable likelihood the jury misunderstood the instructions.

19   (Opinion at 23.)

20              The instructions given to petitioner's jury, read as a whole, correctly instructed the

21   jury as to the applicable California law regarding the special circumstance instruction at issue

22   here.  In general, the jury was informed that for the special circumstance to apply, the robbery

23   could not be "incidental" to the murder or an "afterthought" thereto, but that the murder must

24   have been committed in order to carry out the robbery.  All of the instructions described above

25   were apparently drafted and included in the charge in order to convey this legal concept to the

26   jury.  Petitioner's contention that the jury was "effectively instructed to disregard the centrally

dispositive issue of whether the robbery was incidental to the murder" is not borne out by the record.  (See Traverse at 18.)  On the contrary, the jury was specifically instructed to consider whether the murder was committed in carrying out a robbery.

Throughout this habeas petition, petitioner contends that he killed the victim solely at the instigation of his co-defendant Bracy and in order to prevent her from accusing Bracy of rape.  He informs the court that the robbery was simply an "afterthought" that had nothing to do with the killing.  The jury apparently disagreed with this version of the events, concluding that the robbery was not an "afterthought" but was an independent crime of which the murder was an integral part.  As discussed above, even though the evidence presented at petitioner's trial was susceptible to several interpretations, there was sufficient evidence to support the jury's ultimate finding in this regard.  Further, the jury in petitioner's case was accurately instructed on the applicable law.  Clearly those jury instructions did not prevent the jury from reaching the conclusion urged by petitioner.  Under the circumstances, the jury instructions given in this case did not cause petitioner's right to due process to be violated.  Accordingly, relief as to these claims should be denied.

IV.  Verdict Forms

In his final claim petitioner asserts that his constitutional rights were violated when the state trial judge failed to record the original verdicts returned by the jury.  The facts underlying this claim are unusual and the undersigned finds the issues raised thereby to be difficult and troubling.  The facts surrounding petitioner's final claim were fairly stated by the California Court of Appeal as follows:

> Drayton's jury was provided 13 verdict forms.  On the third day of deliberations, they advised the court they had reached their verdicts and gave them to the court.  The jurors had signed 10 of the 13 verdict forms, finding defendant (1) guilty of first degree murder, personal use of a deadly weapon during the crime true, **robbery special circumstance not true**; (2) guilty of second degree murder, personal use of a deadly weapon during the crime not true; (3) not guilty of second degree murder; (4) guilty of voluntary manslaughter, personal use of a deadly weapon during the crime

not true; (5) not guilty of voluntary manslaughter; (6) guilty of robbery, personal use of a deadly weapon during the crime true; (7) guilty of grand theft, personal use of a deadly weapon during the crime not true; (8) not guilty of grand theft; (9) not guilty of petty theft; and (10) not guilty of theft.  The jury left three verdict forms unsigned: (1) not guilty of first degree murder; (2) not guilty of robbery; and (3) guilty of petty theft.

After reading the verdicts silently, the trial judge stated: "Ladies and gentlemen, in terms of your verdict, before you may return a verdict on a lesser offense, you must unanimously agree that the defendant is not guilty of the greater offense.  [¶]  If you find him guilty of the greater offense, then there is no need to return any verdict as to the lessers as they pertain to the counts.  Do you all understand what I just told you?  All right.  [¶]  And with that understanding then, I am going to send you back to reconsider your verdicts.  Do you need any further clarification?  Does the foreperson understand?  And I think the instruction that you should take a look at - - hand me the packet, please.  It would be number sixty-three in your packet."

(Opinion at 24-25) (emphasis added).  See also RT at 1654.

After addressing the jury in this manner, the court met with counsel off the record in chambers.  (RT at 1654.)  At the hearing on petitioner's post-trial motion to record the original verdicts, the prosecutor testified under oath as to what had been discussed between counsel and the trial judge during this conference.  (RT at 1683.)  The prosecutor testified that the court had informed counsel of the "problem" with the verdict forms and all parties agreed that the verdict forms as returned by the jury were not in proper form and were confusing.  (Id. at 1683.)  During the meeting in chambers the court and all counsel also discussed the possibility that "the jury could have conceivably found the defendant guilty of first degree murder, guilty of robbery but not found the special circumstances true, but from the forms it was unclear what they were really finding."  (Id.)[10]  After the in chambers meeting between counsel and the trial judge, the jury was brought back into the courtroom and the following exchange occurred:

/////

-----

[10]  Petitioner's trial counsel did not dispute this summary version of what had taken place during the in chambers meeting.  (RT at 1683-84.)

THE COURT:  All right.  We are again in session.  Ladies and gentlemen, in terms of if you find the greater offense, then all you need sign would be the greater offense.  You do not need sign any lesser crimes.  Do you all understand that?

And I am somewhat confused in terms of your verdict as it pertains to Count One dealing with the first degree as charged in Count One of the Information and the special circumstances.

The question becomes if you have found guilt as to the robbery or attempt and/or second degree, if you have found that, then within the meaning of the instructions, would you have also found the special circumstances alleged, to wit, the robbery?  Do you understand, foreperson?

JUROR NUMBER TWO:  (Nodding.)

THE COURT:  And in light of what I have just told you, would you reconsider your verdicts then in terms of presenting them to court again?  Are there any questions that you might wish to ask me regarding what I have just told you?

JUROR NUMBER ONE:  I am just not sure I understand what you are saying, sir.

THE COURT:  What I am saying, in terms if a greater offense, you have the question in Count One.  You have the murder in the first degree, murder in the second degree, you have voluntary

manslaughter.  If you have found murder in the first degree, then there is no need to send in a verdict form as to the others.

If you have unanimously found that he is not guilty of murder in the first degree, then you may well consider other verdicts within those categories.  But if you found that, then you just sign what you have – you found and not sign the other forms.

And then there is the question of whether or not a deadly or dangerous weapon was used, to wit, this rock, and you considered that.  And then the question becomes whether or not this - - the - - the special circumstances, to wit, that the murder was committed while he was engaged in the commission or attempted commission of the crime of robbery.

If, in fact, you found that there was robbery and it was done during the – you know, this was read, then, of course, you would - - you have true and not true in the forms of verdict.

/////

/////

1                     Am I clear so far to you?  Just one minute.  Would the lawyers
2                     come forward?

3 (Id. at 1654-56.)

4         The record reflects that there was then another unreported discussion at the bench

5 between the court and all counsel.  (Id. at 1656.)   Again, at the hearing on petitioner's post-trial

6 motion to record the original verdict, the prosecutor testified as to what had been discussed

7 during this unreported bench conference.  (Id. at 1683.)   In this regard, the prosecutor testified

8 that at the bench conference, counsel and the court "agreed that the Court would ask the jury to

9 look at jury instructions 52A and 58A to assist them in stating their clear intent on their verdicts."

10 (Id.)  After conferring with counsel at the bench, the trial judge engaged in the following

11 colloquy with the jury:

12                     THE COURT:  And then the converse, if, in fact, you find that the
                    robbery (sic) was not – that it was not – was not engaged in the
13                     commission or attempted commission of the crime of robbery,
                    then, of course, you would state the converse which is there is a
14                     form there to do that.

15                     And what you might do is also review your instructions 52a and
                    58a.  Does that clarify anything for you or do you wish to go
16                     further?

17                     JUROR NUMBER TWO:  Yes.
                    THE COURT: You feel that is sufficient?
18
19                     JUROR NUMBER TWO:  I think so.

20                     THE COURT:  Do you feel that is sufficient what I said or are you
                    further confused?

21                     JUROR NUMBER ONE:  As I recall it, your Honor, in our
                    discussion - - -
22
23                     THE COURT:  Not the discussions between the jurors.  I don't
                    need to know that.  I just need to know any - - I do not wish to
24                     know your mental process or anything like that.  I cannot be
                    concerned with that.  What I am saying, what I have told you in
25                     terms of whatever your verdicts may be in terms of what I have just
                    told you, do you understand what I have just told you in terms of
26                     how you put your conclusions on these forms of verdict?

All right.  Is there any other considerations from the lawyers that they might wish the Court to convey to this jury?

MR. CORBIN[11]:  Yes, your Honor.  My concern is that - -

THE COURT:  Well, come on around here and tell me.

(Whereupon a discussion was had at the bench between the court and counsel.)

THE COURT:  You shall resume your deliberations.

JUROR NUMBER FOUR:  Can you have murder and robbery without the special circumstances?

THE COURT:  Before I answer that, please, come on around.  There is something I have to do.

(Whereupon a discussion was had at the bench between the court and counsel.)

THE COURT:  The answer – the guides would be in the instructions that I just referenced for you to take a look at, those two instructions that I told you to review.  All right.  Thank you.

(Whereupon the jury continued to deliberate upon a verdict.)

(Whereupon the following proceedings were had outside the presence of the Drayton jury.)

THE COURT:  Is there any comment or commentary that you gentlemen wish to put on the record?

MR. CORBIN:  I think we have covered it, Judge.

(Id. at 1656-58.)

After resuming their deliberations, the jurors requested a rereading of the trial testimony regarding the removal of the victim's clothes and rings.  (CT at 447, 450, 451.)  Just before the jury rendered its final verdict, the following colloquy occurred between the trial judge, the prosecutor and petitioner's trial counsel outside the presence of the jury:

/////

---

[11]  Petitioner was represented at trial by attorney Richard K. Corbin.

THE COURT:  We are meeting outside the presence of the jury for legal matters.  First of all, Mr. Gold wanted to know whether or not I may well have confused some of the jurors in my comments when it dealt with the question of special circumstances.  I did not feel that I did, and I specifically referred them to the specific jury instructions that deal with that.

And it is pretty clear to me, if they did reference those jury instructions, then, of course, the legal guides that are needed are contained within them.  But out of an abundance, do you wish me to read it to them again or what?  I don't see the need.

MR. GOLD (the prosecutor):  Maybe if they could just be asked - -

THE COURT:  Why don't you come take a look at these two instructions and basically see if you are satisfied.  I don't see what more I can do.

MR. GOLD:  Maybe before you receive the verdicts, you can just ask the foreperson - -

THE COURT:  If they reviewed those instructions?

MR. GOLD:  And if anybody has any questions about the law.

THE COURT:  I don't know if I'm going to do that.  What's your position?

MR. CORBIN:  My position is Mr. Gold asks you to draw their attention.

THE COURT:  Do you feel any urgency as far as your client to reread the instructions or go further than what I did?

MR. CORBIN:  None.

THE COURT:  All right.  Bring them in.

(RT at 1667-68.)

The jurors subsequently returned a guilty verdict on the first degree murder charge with the personal use of a deadly weapon and with the special circumstance that the murder was committed while petitioner was engaged in the commission or attempted commission of a robbery.  (Id. at 445-46.)  Petitioner was also convicted of robbery.  (Id.)  At the request of petitioner's counsel, the jurors were then individually polled with respect to their verdicts on the murder charge and special circumstance allegation.  (RT at 1669-71.)  All of the jurors

acknowledged that this was his or her true and correct verdict.  (Id.)[12]  The verdicts were then

recorded and the jury was dismissed on April 26, 1996.  (Id.)

On June 3, 1996, the same date set for judgment and sentence, petitioner filed a

motion requesting that the court record the original jury verdict in which the jury found the

special circumstance allegation not to be true.  (CT at 452-55.)  Petitioner's trial counsel argued

that after the first verdicts were read by the court, "the jury's understanding was that the court

had rejected its finding that the special circumstances allegation was untrue, and that they must

make a finding that said allegation was true."  (Id. at 453.)  Counsel further argued that the court

should record the entire original verdict because it was "valid, though inconsistent."  (Id.)

During oral argument on the motion, petitioner's trial counsel was sworn as a witness and

testified that after the second and final set of jury verdicts had been returned, he

> talked to all the jurors and an investigator stood by me from the
> District Attorney's Office while I talked to three of them.  I talked
> to number three (sic), I talked to the foreman.  These were (sealed),
> (sealed), and (sealed), and in effect what they said was we felt that
> the Court indicated we couldn't do that.  So we went back, pulled
> the transcripts, had them reread to us to try to find something in
> there that would support a reason to change our verdict to find it
> true.
>
> And the foreman says essentially all twelve of us felt that we had a
> very good verdict, but we felt from what the Court was saying that
> it wasn't right, and we had to change it.

(RT at 1685-86.) [13]

/////

---

[12]  Counsel did not request a poll on the robbery charge.  (RT at 1672.)

[13]  Of course, evidence concerning the mental processes by which a juror arrived at
his/her verdict is inadmissible to test the validity of a verdict.  Tanner v. United States, 483 U.S.
107, 117-122 (1987); Sassounian v. Roe, 230 F.3d 1097, 1108-09 (9th Cir. 2000); Fed. R. Evid.
606(b).  Likewise, under California law, a court may not consider juror affidavits for the purpose
of demonstrating jurors' mental processes during deliberations.  (Cal. Evid. Code § 1150;
Bigelow v. Superior Court, 208 Cal. App. 3d 1127, 1137 (1989)).  Accordingly, this evidence
may not be and has not been considered by the undersigned in considering this claim.

1        Petitioner now argues that "[b]y not recording the original verdict, the trial court

2   violated petitioner's state and federal constitutional rights to due process to jury trial, to be

3   acquitted, and against double jeopardy because the jury intent to acquit was clear." (Pet. at 7.)  In

4   this regard, petitioner first contends that the original verdicts were not inconsistent or unclear and

5   should have been "recognized." (Traverse at 19.)  In support of this argument, he engages in a

6   lengthy analysis of the original verdict forms. (Id. at 26-29.)  "In the alternative," petitioner

7   contends that even if the original verdict forms returned by the jury were unclear to the parties

8   and to the trial judge, this court should now "appreciate their clarity" and give effect to the jury's

9   intent. (Id.)  Petitioner urges the court to "simply enter the original verdicts regardless of the

10  propriety of the trial court's decision to have the jury continue deliberations." (Id. at 29.)  As yet

11  another alternative, petitioner argues that even if the verdicts first returned were inconsistent or

12  unclear, "the finding on the special circumstance allegation was not inconsistent and should have

13  been severed from those verdicts deemed confusing and inconsistent." (Id. at 31-33; see also Pet.

14  at 7.)  Finally, petitioner argues that the state trial judge "effectively coerced the jury into

15  changing their verdicts by the occurrences surrounding the receipt of the original verdicts." (Pet.

16  at 7; see also Traverse at 34-36.)

17        Petitioner contends, in essence, that the original verdict forms returned by the jury

18  evidenced a clear intent to find the special circumstance allegation "not true" and that the trial

19  court should have recorded that verdict rejecting the special circumstance finding.  He argues that

20  the jurors changed their verdict and found the special circumstance that the murder was

21  committed while petitioner was engaged in the commission of a robbery only because the jury

22  felt pressured to do so by the trial judge's remarks.

23        Respondent counters by arguing that this claim is procedurally barred due to

24  petitioner's failure to timely object at trial to the resuming of jury deliberations and the state

25  appellate court's conclusion that petitioner had waived any objection on this grounds.

26  Respondent also contends that this claim is barred under Teague v. Lane, 489 U.S. 288 (1988)

1    because at the time petitioner's conviction became final there was no clear rule requiring that the

2    initial, inconsistent and uncertain verdicts be accepted.  Finally, respondent argues that this claim

3    fails on the merits because a trial court is authorized to re-submit a case to the jury when there is

4    uncertainty or ambiguity in its verdict as was the case here.

5            The California Court of Appeal rejected petitioner's argument challenging the

6    trial court's failure to record the jury's original verdict, reasoning as follows:

7            Drayton offers a convoluted theory in which he purports to
         interpret the jury's intent underlying the original verdicts.
8            However, the verdicts, as originally submitted, were inconsistent,
         and the trial court, without objection from counsel, directed the
9            jury to resume deliberations in order to clarify the verdicts.
         Accordingly, counsel has waived this argument.  (See People v.
10           Neufer, (1994) 30 Cal. App. 4th 244, 254.)

11   (Opinion at 25.)

12           Although brief and somewhat conclusory, this decision is not contrary to or an

13   unreasonable application of clearly established federal law.  It has been recognized in both the

14   criminal and civil context that a trial court has the authority to require redeliberation in cases in

15   which there is uncertainty, contingency, or ambiguity with respect to a jury's verdict.  See

16   United States v. Hiland, 909 F. 2d 1114, 1137 (9th Cir. 1990); E.F. Hutton & Co. v. Arnebergh,

17   775 F.2d 1061, 1063 (9th Cir. 1985) (verdicts so ambiguous that judgment could not properly be

18   entered thereon); see also United States v. Rastelli, 870 F.2d 822, 835 (2d Cir. 1989); People v.

19   Bonillas, 48 Cal. 3d 757, 779, (1989) (the trial court was authorized to reconvene the jury to

20   complete an obviously incomplete verdict).  The undersigned recognizes the principle that it is a

21   jury's prerogative to return inconsistent verdicts in a criminal case and to acquit out of leniency.

22   Dunn v. United States, 284 U.S. 390 (1932); United States v. Martorano, 557 F.2d 1, 9 (1st Cir.

23   1977); United States v. Zane, 495 F.2d 683, 690-91 (2d Cir. 1974); United States v. Walker, 586

24   F.Supp. 42, 43 (E.D.N.Y.  1984); Bigelow v. Superior Court, 208 Cal. App. 3d 1127, 1134-36

25   (1989).  Nonetheless, the initial verdict forms returned by the jury in petitioner's case were not

26   merely inconsistent, they were ambiguous to say the least and justifiably left the court and all

1  counsel uncertain as to what the jury had intended to find.  In this regard, and as noted above, the

2  jury initially signed and returned all but three of the thirteen verdict forms they had been

3  provided.  Among the ten signed verdicts were the following: on count one, finding petitioner

4  guilty of first degree murder with the use of a deadly weapon but with the special circumstance

5  not true (CT 731); on count one, guilty of second degree murder with the use of a deadly weapon

6  allegation not true (CT 733); on count one, not guilty of second degree murder (CT 734); on

7  count one, guilty of voluntary manslaughter with the use of a deadly weapon allegation not true

8  (CT 735); on count one, not guilty of voluntary manslaughter (CT 736); on count two, guilty of

9  robbery with the use of a deadly weapon allegation found true (CT 737); on count two, guilty of

10  grand theft with the use of a deadly weapon allegation found not true (CT 739); and on count

11  two, not guilty of grand theft (CT 740.)[14]

12        In this case it is also true that the jury's initial verdict was not "complete" because

13  it was not read in open court, the jury never orally acknowledged it and it was not recorded.  See

14  Cal. Penal Code §§ 1149, 1164; People v. Thornton, 155 Cal. App. 3d 845, 852-55 (1984);

15  People v. Peavey, 126 Cal. App. 3d 44, 49 (1981).  Moreover, the trial judge's remarks to the

16  jury upon the initial return of the confusing verdict forms were not coercive and exerted no undue

17  pressure on any juror to change his or her mind.  (See RT at 1654-58.)  After redeliberation, the

18  jurors returned a verdict finding petitioner guilty of murder in the first degree with the use of a

19  deadly weapon and finding the special circumstance that the murder was committed while

20  petitioner was engaged in the commission of a robbery.  (CT at 445-46.)  The jury was polled and

21  stated unanimously that this verdict was their true verdict.  (RT at 1669-71.)

22  /////

23

24        [14] Among the three verdict forms not completed and signed by the jury initially was the
   one finding petitioner not guilty of first degree murder.  (See CT 732.)  It should also be noted

25  that the one initial verdict form which petitioner now argues should have been accepted without
   question by the trial court because it suggested a finding that the special circumstances allegation

26  was not true, also reflected a guilty verdict on the first degree murder charge and a finding that
   petitioner used a deadly weapon in the commission of that offense.  (CT at 731.)

1        Most critically perhaps, at the time the initial verdict forms were returned

2   petitioner's trial counsel did not move to have the verdicts entered.  Rather, the record appears to

3   reflect that the trial judge and all counsel agreed that the initial verdict forms, including the

4   verdict with respect to the special circumstance allegation, were confusing and unclear.  (RT at

5   1683.)  Indeed, despite several sidebar conferences to discuss the issue, petitioner's trial counsel

6   failed to raise any objection whatsoever to the trial judge's decision to send the jury back to

7   deliberate further on the entire verdict and to re-submit new verdict forms.  (RT at 1654-58.)

8   After the jury received further instructions and was sent back to resume their deliberations, the

9   trial judge specifically invited further comment or argument from counsel.  (RT at 1658.)

10  Petitioner's counsel stated his satisfaction with the trial court's actions stating "I think we have

11  covered it, Judge."  (Id.)

12       The California Court of Appeal rejected petitioner's challenge to the trial court's

13  failure to accept the initial verdict forms on the ground that his counsel had waived the argument

14  by failing to object at the time to the trial court's re-submission of the matter for further

15  deliberations.  (Opinion at 25.)   In Wainwright v. Sykes, 433 U.S. 72 (1977), the Supreme Court

16  held that a defendant's failure to make a timely contemporaneous objection under state law,

17  absent a showing of cause for the noncompliance and some showing of actual prejudice, barred

18  habeas corpus review of his claim.  Because the California courts are the final expositors of

19  California law, this court must accept their conclusion that petitioner's failure to timely object

20  violated California's contemporaneous objection rule.  See Wainwright, 433 U.S. at 86.  The

21  California Court of Appeal's ruling to that effect was not an unreasonable application of clearly

22  established federal law on procedural default.  As the United States Supreme Court has

23  explained, in all cases in which a state prisoner has defaulted his federal claims in state court

24  pursuant to an independent and adequate state procedural rule, federal habeas review of the

25  claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as

26  a result of the alleged violation of federal law, or demonstrate that failure to consider the claims

1   will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750

2   (1991).  The Ninth Circuit has held that California's "contemporaneous objection rule" is an

3   adequate procedural bar.  Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing

4   Wainwright, 433 U.S. at 87).  See also Rich v. Calderon, 187 F.3d 1064, 1070 (9th Cir.1999)

5   ("We may not review his six other prosecutorial misconduct claims because [petitioner]

6   procedurally defaulted by failing to make contemporaneous objections, and the California court

7   consequently invoked a procedural bar to their consideration, the validity of which Rich has

8   failed to overcome"), cert. denied, 528 U.S. 1092 (2000); Vansickel v. White, 166 F.3d 953,

9   957-58 (9th Cir. 1999); Garrison v. McCarthy, 653 F.2d 374, 377 (9th Cir. 1981) (petitioner who

10  failed to comply with a state's contemporaneous objection rule, barring appellate review of

11  alleged errors that are not raised at trial by timely objection, was not entitled to federal habeas

12  review of the constitutional claim absent a showing of cause for noncompliance with the state

13  rule and prejudice).

14          Here, petitioner has not demonstrated cause for failing to contemporaneously

15  object to the trial judge's re-submission of the verdict forms to the jury for further deliberations.

16  He has also failed to demonstrate actual prejudice or that a fundamental miscarriage of justice

17  will result if this claim is barred.  Under the circumstances presented here, the undersigned

18  concludes that the state appellate court's determination that this claim has been waived by

19  petitioner is not unreasonable and should not be set aside on habeas review.  See Woodford v.

20  Visciotti, 537 U.S. at 25.[15]

21  _____

22      [15] As noted above, the undersigned has found the issues raised by the state trial court's
    handling of the verdict forms to be difficult and troubling.  We do not know, of course, why

23  petitioner's counsel did not object to the re-submission of all the forms to the jury for further
    deliberations and clarification or why counsel did not insist on the entry of the initial verdict

24  form reflecting a "not true" finding as to the special circumstance.  The answer, however, may
    not require much speculation but mere reference to the verdict forms themselves.  As indicated

25  above, the initial verdict form upon which the jury suggested a finding of not true with respect to
    the special circumstance allegation also reflected a guilty verdict on the charge of first degree

26  murder with the use of a deadly weapon.  (CT at 731.)  If that verdict was accepted, petitioner
    stood convicted of the most serious charge facing him, first degree murder.  On the other hand,

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 7, 2006.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:bb
dray0708.hcden

_____

the remaining verdict forms, with their various inconsistencies, suggested the possibility that the jury was considering both second degree murder and voluntary manslaughter.  (CT at 733-36.) Hoping for the jury to settle upon a lesser offense with respect to the killing, petitioner's counsel may very well have felt compelled to acquiesce to the trial judge's re-submission of the verdict forms to the jury with the clarifying instructions.  See Miller v. Sherrer, No. Civ. A. 02-5393, 2005 W.L. 1863668, *5-10 (D. N.J. Aug. 3, 2005) (denying habeas relief where the state trial court requested the jury to deliberate further and gave clarifying instruction without objection by counsel upon the return of confusing verdicts under circumstances whereby the re-submission gave the petitioner the possibility of being found guilty on the lesser charge).  The fact that his counsel's approach did not prove successful does not entitle petitioner to habeas relief.

28